UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANCY C. CALDWELL,<br><br>     Plaintiff,<br>  v.<br><br>WELLS FARGO BANK, N.A., et al.<br><br>     Defendants. | Case No.: 13-CV-1344-LHK<br><br>ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER |

Pending before the Court is Plaintiff's third ex parte application for a temporary restraining order to enjoin a foreclosure sale of Plaintiff's home. ECF NO. 21. Based on the documents submitted by the parties and the record in this case, the Court DENIES Plaintiff's ex parte application.

**I.   BACKGROUND**

On September 19, 2007, Plaintiff borrowed $750,000 from World Savings Bank, FSB and secured the loan with a deed of trust. ECF No. 1 ("Compl."), Ex. C. Plaintiff, who began having difficulty paying for her loan, applied to receive, and received, a loan modification in February 2009 from the successor in interest to her loan, Wachovia Mortgage FSB, which merged with

1

Wells Fargo Bank Southwest, N.A. to become Wells Fargo Bank N.A. Declaration of Nancy C. Caldwell, ECF No. 21-1 ("Caldwell Decl."), ¶ 9; Compl. ¶ 4. Plaintiff made eleven monthly payments after her loan modification was approved, but then could no longer make payments. Caldwell Decl. ¶ 9. Plaintiff has not made a payment in three years, and the debt from the loan is now over $869,000. Compl., Ex. D.

### A. Central District of California Proceedings

Plaintiff's home is located at 203 Calle Manzanita in Santa Barbara, California ("the Property"), which is in the Central District of California. *See Caldwell v. Wells Fargo Bank, N.A.*, 2:12-CV-09373-JAK-FFM ("*Caldwell I*" or "Central District case"), ECF No. 1 (Notice of Removal).[1] Plaintiff filed a wrongful foreclosure action in the Santa Barbara Superior Court on October 17, 2012. *Id.* On October 31, 2012, Defendant removed this action to the U.S. District Court for the Central District of California. *Id.* In Plaintiff's Complaint in the Central District case, Plaintiff alleged eleven causes of action: (1) Violation of California Business and Professions Code §§ 17200 *et seq.* ("UCL"); (2) Unfair and Deceptive Business Practices in Loan Servicing; (3) (2) Unfair and Deceptive Business Practices in Foreclosure Process; (4) Fraud in Loan Origination; (5) Set Aside Pending Trustee Sale Based on Wrongful Foreclosure Proceedings, California Civil Code 2923.5; (6) Real Estate Settlement Procedures Act ("RESPA"); (7) Breach of Implied Covenant of Good Faith and Fair Dealing; (8) Cancellation of Void Contract and Restitution; (9) Quiet Title; (10) Declaratory Relief; and (11) Accounting. *See* Notice of Removal, Ex. A.

On November 6, 2012, Plaintiff filed an ex parte application for temporary restraining order ("TRO") to enjoin a trustee's sale scheduled for November 7, 2012. ECF No. 5. Judge Kronstadt initially granted Plaintiff's request because Plaintiff filed the TRO shortly before the foreclosure sale, thereby depriving the Court of adequate time to review the request. ECF No. 15 at 1-2. In dissolving the TRO, Judge Kronstadt noted that Plaintiff was at fault for creating the emergency

---

[1] All ECF references in this section are to *Caldwell v. Wells Fargo Bank, N.A.*, 2:12-CV-09373-JAK-FFM, in the Central District of California. All ECF references in other sections of this Order are to the instant case in the Northern District of California, unless specified otherwise.

2
Case No.: 13-CV-1344-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

which necessitated the TRO because, despite having been aware that Defendants planned to foreclose upon Plaintiff's Property for eleven months, Plaintiff failed to move for injunctive relief earlier. *Id.* at 2. Judge Kronstadt found that Plaintiff's decision to file the TRO when she did was a "strategic choice." *Id.* at 3.

On November 9, 2012, Defendant moved to dismiss the complaint. ECF No. 12. On November 30, 2012, Plaintiff filed her First Amended Complaint. ECF No. 17. On December 5, 2012, Plaintiff filed a Notice of Errata correcting her First Amended Complaint ("FAC"). ECF No. 18. Plaintiff's FAC included only six causes of action. On December 17, 2012, Defendant filed a Motion to Dismiss the FAC. ECF No. 19. On February 12, 2013, Judge Kronstadt dismissed Plaintiff's First Amended Complaint. ECF No. 35. Judge Kronstadt ordered the following: (1) dismissal of Plaintiff's UCL claims based on loan servicing and modification because they are preempted under 12 C.F.R. 560.2(b)(10); (2) dismissal with leave to amend of Plaintiff's claim to set aside trustee's sale because it was not ripe; (3) dismissal with leave to amend of Plaintiff's RESPA, negligence, and quiet title claims for failure to state a claim; and (4) dismissal without leave to amend of Plaintiff's UCL claim based on a violation of § 2923.5 because Plaintiff lacked standing. *Id.* at 1-3.

On March 5, 2013, Plaintiff filed her Second Amended Complaint also with six causes of action. ECF No. 36. On March 25, 2013, Defendant filed a Motion to Dismiss the Second Amended Complaint. ECF No. 37. On June 3, 2013, Judge Kronstadt held a hearing on the Motion to Dismiss, stated his tentative views, and took the Motion under submission. ECF No. 45. On June 28, 2013, Plaintiff dismissed the Central District case before Judge Kronstadt ruled on Defendant's Motion to Dismiss. ECF No. 52.

**B.    Plaintiff's Five Bankruptcy Proceedings**

Between August 2011 and February 2013, Plaintiff and her husband initiated a total of five bankruptcy proceedings, three of which were strategically filed on the eve of scheduled foreclosure sales. *See* 13-CV-01344-LHK, ECF No. 23 ("RJN"), Ex. C.[2]

---

[2] Exhibit C consists of the dockets from Plaintiff's various bankruptcy cases in U.S. District Court. "Under Fed. R. Evid. 201, the Court may take judicial notice of any fact that is capable of accurate

3

Case No.: 13-CV-1344-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff and her husband jointly filed their first petition for bankruptcy in August 2011. *Id.* This case was closed on November 21, 2011. *Id.*

Plaintiff filed another petition for bankruptcy on April 2, 2012, which was the same date that the trustee's sale previously had been set. *Id.*; Opp'n at 3. Plaintiff's bankruptcy action was dismissed on May 10, 2012 due to Plaintiff's failure to file "schedules, statements, and/or plan." RJN, Ex. C.

Plaintiff's husband filed for bankruptcy on August 17, 2012. *Id.* This cases was dismissed on September 5, 2012 due to Plaintiff's husband's failure to file schedules, statements, and/or plan. *Id.*

Plaintiff filed another bankruptcy petition on November 21, 2012, the eve of a scheduled trustee sale. *Id.*; Opp'n at 3. That bankruptcy action was dismissed on December 11, 2012 due to Plaintiff's failure to file "schedules, statements, and/or plan." RJN, Ex. C.

Plaintiff's husband filed a third bankruptcy petition on February 25, 2013, again on the eve of a trustee's sale. *Id.*; Opp'n at 3-4. This action was dismissed on March 12, 2013 due to Plaintiff's husband's failure to file "schedules, statements, and/or plan." RJN, Ex. C.

### C. Instant Proceeding

On March 26, 2013, Plaintiff filed her Complaint in this District, which is based on allegations and causes of action that largely duplicate those made in the Central District case. *See* Compl. On March 26, 2013, Plaintiff also filed with this Court an ex parte application for TRO to enjoin a trustee's sale scheduled for March 28, 2013. ECF No. 3. Plaintiff filed her Complaint and ex parte application without disclosing to this Court the existence of the pending Central District case or the Central District Court's denial of Plaintiff's ex parte application for TRO. ECF Nos. 1 and 3. On March 28, 2013, Plaintiff withdrew her first TRO motion because Defendant agreed to postpone the sale for non-litigation reasons. Opp'n at 3; ECF No. 12.

---

and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including the 'proceedings and records of another court if they relate to matters at issue.'" *Ryti v. State Farm Gen. Ins. Co.*, C 12-01709 JW, 2012 WL 2339718, at *1 n.4 (N.D. Cal. May 30, 2012) (citation omitted); *see also* Fed. R. Evid. 201. The Court therefore takes judicial notice of the Bankruptcy Court dockets. *See id.* (taking judicial notice of state court dockets).

4

Case No.: 13-CV-1344-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

On April 10, 2013, the Court ordered Plaintiff to identify "all dates on which a Trustee Sale has been scheduled on Plaintiff's Property and when Plaintiff became aware of each date" and "all applications for a temporary restraining order, preliminary injunction or permanent injunction Plaintiff has filed to enjoin foreclosure on Plaintiff's Property and the disposition of each application." ECF No. 13.  Plaintiff refused to provide such information and failed to comply with the Order.  ECF 16.

On July 10, 2013, Plaintiff filed an ex parte application for TRO to enjoin a trustee's sale scheduled for July 12, 2013.  ECF No. 21 ("Mot.").  Here too, Plaintiff does not state when she became aware of the trustee sale.  *See* Mot.; Caldwell Decl.  On July 10, 2013, Defendant filed a Preliminary Opposition and supporting Request for Judicial Notice.  ECF Nos. 22 ("Opp'n") and 23 ("RJN").

## II. LEGAL STANDARDS

### A. Ex Parte Relief

As Judge Kronstadt explained in his Order Dissolving TRO, a party must show two things to justify ex parte relief: first, that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and second, "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *see also Beluga Shipping GMBH & Co. KS BELUGA FANTASTIC v. Suzlon Energy LTD.*, C 10-80034 JW PVT, 2010 WL 3749279, at *5 (N.D. Cal. Sept. 23, 2010) (citing the two ex parte requirements from *Mission Power Eng'g*); *Thomas Weisel Partners LLC v. BNP Parib*, C 07-06198 MHP, 2009 WL 55946, at *3 n.2 (N.D. Cal. Jan. 7, 2009) (same).  The first factor is determined by looking to the merits of the motion with a sliding scale based on the severity of the harm.  *Mission Power Eng'g*, 883 F. Supp. at 492.  The second factor looks to the "creation of the crisis," and asks whether "parties . . . have failed to present requests when they should have."  *Id.* at 493 (quoting *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989)).

### B. Temporary Restraining Orders

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A plaintiff seeking a preliminary injunction must make a four-fold showing: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding that "a plaintiff's motion for preliminary injunctive relief" has a "requirement for substantial proof [that] is much higher" than a defendant's summary judgment motion).

In addition, a plaintiff seeking issuance of a TRO without notice to the defendant must satisfy two further requirements: (1) "specific facts in an affidavit or a verified complaint [must] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) the applicant's attorney must certify in writing the reasons why notice should not be required. Fed. R. Civ. Pro. 65(b)(1). The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an ex parte TRO. *Reno Air Racing Assoc., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Such circumstances include "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (quoting *Amer. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir.1984)).

### III. ANALYSIS

#### A. Ex Parte Relief

In the instant case, Plaintiff has defaulted twice: first on her original loan since at least February 2009, then after she was granted a loan modification, on her modified loan since sometime in 2010. Caldwell Decl. ¶ 4, 9. It appears that Plaintiff has made no loan payments since approximately 2010 and has not been offered any loan modifications since December 2010. Caldwell Decl. ¶¶ 4, 9, 19.

Plaintiff and her husband have successfully postponed five previously scheduled foreclosure sales of Plaintiff's Property. *See* RJN, Ex. C. First, Plaintiff filed a petition for bankruptcy on April 2, 2012, which was the same date that a trustee's sale previously had been set. *Id.*; Opp'n at 3. Plaintiff's bankruptcy action was dismissed on May 10, 2012 due to Plaintiff's failure to file "schedules, statements, and/or plan." RJN Ex. C. Second, on November 6, 2012, Plaintiff filed an ex parte application for TRO to enjoin a trustee's sale scheduled for November 7, 2012. ECF No. 5. Judge Kronstadt initially granted Plaintiff's request. *See id.* However, on November 13, 2012, he dissolved the TRO because Plaintiff filed the TRO shortly before the foreclosure sale, thereby depriving the Court of adequate time to review the request. ECF No. 15 at 1-2. Third, Plaintiff filed another bankruptcy petition on November 21, 2012, the eve of the re-scheduled trustee sale. *Id.*; Opp'n at 3. That bankruptcy action was dismissed on December 11, 2012 due to Plaintiff's failure to file "schedules, statements, and/or plan." RJN Ex. C. Fourth, Plaintiff's husband filed a third bankruptcy petition on February 25, 2013, again on the eve of a trustee's sale. *Id.*; Opp'n at 3-4. This action was dismissed on March 12, 2013 due to Plaintiff's husband's failure to file "schedules, statements, and/or plan." RJN Ex. C. Fifth, Plaintiff filed an ex parte application for TRO in the instant case on March 26, 2013 to enjoin a trustee's sale set for March 28, 2013. Plaintiff withdrew that application because Defendant agreed to postpone the sale for non-litigation reasons. Opp'n at 3; ECF No. 12.

Plaintiff now seeks to postpone a foreclosure sale a sixth time. On July 10, 2013, Plaintiff filed the instant ex parte application for TRO to enjoin a trustee's sale set for July 12, 2013. The July 12, 2013 trustee's sale was noticed on June 19, 2013

1    RJN, Ex. D[3]; Declaration of Kenneth Franklin, ECF No. 22-1 ("Franklin Decl."), Ex. 1.

2    Defendant's assert that Plaintiff had notice of the current trustee's sale on or about June 19, 2013.

3    Opp'n at 4.  The notice of sale was mailed to plaintiff and her husband on June 21, 2013, and

4    posted on the property on June 22, 2013.  Franklin Decl., Ex. 1.  As with the previous two TRO

5    applications and three of the bankruptcy petitions, Plaintiff waited until shortly before the July 12,

6    2013 scheduled sale to seek emergency relief despite being on notice of the sale for some time.

7    Mot.

8    Moreover, Plaintiff has been on notice of Wells Fargo's intent to foreclose on Plaintiff's

9    home for years.  In fact, Defendant filed a notice of default on or about October 23, 2009.

10   *Caldwell I*, ECF No. 36 (Second Amended Complaint), ¶ 28.  Defendant recorded a Notice of

11   Trustee's Sale on February 22, 2012 and again on March 13, 2012.  *See id.*, ¶ 30.  Plaintiff has been

12   litigating to prevent foreclosure on her home since October 2012 in three different judicial fora.

13   There is simply no good reason why Plaintiff waited to file her third application for a TRO until

14   two days before the noticed foreclosure sale, why Plaintiff filed her third application for TRO ex

15   parte, and why Plaintiff did not file a motion for a preliminary injunction according to regular

16   noticed motion procedures, or with a request to shorten time, in either the Central District of

17   California or here.   Accordingly, the Court finds that Plaintiff is not entitled to ex parte relief.

18   **B.    Likelihood of Success on the Merits**

19   Plaintiff alleges five different categories of claims in her Complaint.  These include: (1) a

20   violation of Cal. Civ. Code § 2923.6; (2) a violation of Cal. Civ. Code § 2923.5; (3) a stay of

21   foreclosure for Defendants' failure to abide by the terms of the "Pick a Payment" settlement; (4)

22   unfair and deceptive business practices; and (5) violation of the Real Estate Settlement Procedures

23   Act ("RESPA").  However, in her TRO motion, Plaintiff has only addressed the first three

24   categories of claims.  Accordingly, the Court will address only these three claims in turn.

---

[3] The Court takes judicial notice of the Notice of Trustee's Sale.  *See* Fed. R. Evid. 201; *See, e.g. Fazio v. Recontrust Co., N.A.*, C 13-554 MEJ, 2013 WL 1962336, at *2 (N.D. Cal. May 10, 2013) (taking judicial notice of Notice of Trustee's Sale)

.

### 1.     Cal. Civ. Code § 2923.6

Plaintiff alleges that Wells Fargo violated California Code of Civil Procedure § 2923.6 because it failed to take into account material changes in Plaintiff's income when it denied Plaintiff's most recent request for a loan modification on February 20, 2013.  *See* Compl. ¶ 37. Plaintiff alleges that shortly before she submitted her most recent request for a loan modification in early 2013, her income increased nearly 70 percent.  *Id*.  Notwithstanding this change, in Wells Fargo's February 20, 2013 letter, Wells Fargo stated that it was denying the modification because Plaintiff had failed to "show a 'material change' in [her] financial circumstances which would make [her] eligible for a new… modification review."  *Id.*, Ex. B.  Plaintiff alleges that this statement implies that Wells Fargo did not consider the change in Plaintiff's income, as that was a material change.  *Id.*, ¶¶ 37-41.  Consequently, Plaintiff contends that Wells Fargo violated section 2923.6 because that section requires Wells Fargo to "review an application if there has been a "material change in the borrower's financial circumstances.'"  Mot. at 10 (quoting Cal. Civ. Code § 2923.6).  Plaintiff's arguments fail for several reasons.

First and foremost, Plaintiff mischaracterizes Wells Fargo's reasons for denying Plaintiff's early 2013 loan modification application.  In fact, Wells Fargo's February 20, 2013 letter states:

> I have personally reviewed your file and the Loan Modification Application.  The documents submitted do not show a "material change" in your financial circumstances which would make you eligible for a new first lien loan modification review.  You were previously granted a loan modification and have since defaulted under your loan modification.  Your prior loan modification renders you ineligible for a second loan modification, regardless of any alleged change in your financial circumstances.  Accordingly, Wells Fargo is not obligated to and cannot review you for a second first lien loan modification as the applicable programs do not allow for repeat modifications.
>
> Since you are in default under an existing loan Wells Fargo may proceed to a trustee's sale.

ECF No. 21-1, Ex. B at 1.  Thus, Wells Fargo did review Plaintiff's application and did consider Plaintiff's alleged change in financial circumstances.  However, Plaintiff's alleged change in financial circumstances was insufficient to overcome Plaintiff's ineligibility for a third loan because of Plaintiff's default on a loan modification.

9
Case No.: 13-CV-1344-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Moreover, Plaintiff does not provide a copy of her early 2013 loan modification application or any documentation, other than her self-serving declaration, supporting her claim that her income increased from $3,000 per month to $8,000 per month. Wells Fargo was aware of Plaintiff and/or her husband's April 2, 2012 and November 21, 2012 bankruptcy petitions because Wells Fargo could not proceed with the scheduled trustee's sales of Plaintiff's Property at those times because of the bankruptcy petitions. Moreover, the Court notes that five days after Wells Fargo's February 20, 2013 denial letter, Plaintiff's husband filed yet another bankruptcy petition on February 25, 2013. The Court does not find Plaintiff's allegation that her income increased 70 percent credible.

Nonetheless, even if Plaintiff had a 70 percent increase in income, Wells Fargo could have determined that this change was not sufficiently material to warrant granting Plaintiff a second loan modification. Given that Wells Fargo reviewed Plaintiff's application and determined that the alleged change in Plaintiff's income was not a material change justifying a second loan modification, the Court is not persuaded that Plaintiff is likely to prevail on her claim under § 2923.6.

### 2.    Cal. Civ. Code § 2923.5

The Court finds that Plaintiff has not demonstrated a likelihood of success on Plaintiff's second cause of action alleging a violation of California Code of Civil Procedure § 2923.5(a)(2). Section 2923.5(a)(2) requires that "[a] mortgage servicer . . . contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During this conversation, the lender must advise the borrower that the borrower may request additional meetings, which the lender must schedule within fourteen days, and the lender must provide the borrower with the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. *Id*. "If section 2923.5 is not complied with, then there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 223 (2010). The remedy for a failure to comply with

section 2923.5 is "to postpone the sale until there has been compliance with" the statute. *Id*. (citing Cal. Civ. Code § 2924g (c)(1)(A)).

Plaintiff alleges that she was not contacted by Wells Fargo before it filed its began foreclosure proceedings. Compl. ¶¶ 48-50. Plaintiff alleges that any contact she had with Wells Fargo was initiated by Plaintiff. *Id*. ¶ 51. Plaintiff further alleges that Wells Fargo failed to provide Plaintiff with HUD's toll-free number so that Plaintiff could find a HUD-certified housing counseling agency. *Id*. ¶ 48. The Court is not persuaded that Plaintiff is likely to prevail on this claim.

First, the two Notices of Default Plaintiff has attached to the Complaint, from October 2009 and November 2011 respectively, each include a declaration stating that Wells Fargo "tried with due diligence" to contact Plaintiff to discuss her options as is required by Section 2923.5. *See* Compl, Ex. D. To the extent Wells Fargo acted with due diligence in attempting to contact Plaintiff, this is sufficient to satisfy Section 2923.5. *See* Cal. Civ. Code § 2923.5(e) ("A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer . . . .").

Moreover, while Plaintiff states in the Complaint that Defendant did not send her a certified letter or attempt to contact her via telephone as required by Section 2923.5, Plaintiff's declaration indicates that she has been in contact with Wells Fargo over the course of the last few years. *See* Caldwell Decl. ¶ 11 ("I contacted Wells Fargo, the Lender at the time and tried to explain my dilemma . . . ."); *id*. ¶ 13 ("In early 2013, I once again sent a loan modification application to Wells Fargo"). Notably, Plaintiff's declaration is frustratingly vague as to the nature of Plaintiff's contacts with Wells Fargo (*e.g*. Plaintiff does not indicate whether she's spoken to Wells Fargo over the phone or explored options to avoid foreclosure as require by Section 2923.5). Given that it appears that Plaintiff has been in contact with Wells Fargo and that Wells Fargo's Notices of Default state that Wells Fargo has exercised due diligence in attempting to comply with Section 2923.5, the Court is not persuaded that Plaintiff is likely to prevail on this claim.

### 3. Failure to Abide by the Settlement Agreement

Plaintiff also alleges that Wells Fargo has failed to abide by the terms of the class action "Pick a Payment" settlement for failure to offer Plaintiff a HAMP or MAP2R loan modification. Compl. ¶¶ 68, 69; *see also* ECF No. 17, Ex. A ("Settlement Agreement"). Specifically, Plaintiff claims that Plaintiff was wrongfully denied a HAMP modification because Defendants did not take into account her changed financial circumstances, Compl. ¶ 68, and that Plaintiff was never considered for a MAP2R modification, in violation of the Settlement Agreement. *Id.* at ¶ 69. Plaintiff claims that the Settlement Agreement expressly provides a cause of action "for class members to assert their individual rights under the settlement." *Id.* at ¶ 67. Plaintiff's argument fails.

The Settlement Agreement provides that, "[s]ubject to the provisions contained in Section VI(E)(4)," class members shall be considered for a HAMP modification, and, if they "do not qualify for or elect not to accept a HAMP modification," they shall be considered for a MAP2R modification. Settlement Agreement § VI(E)(1). Section VI(E)(4) provides that class members "who have received earlier loan modifications not pursuant to this Agreement will not be eligible to be considered for new loan modifications under this Agreement." Plaintiff admits that she received a loan modification on her Pick a Payment loan in approximately February 2009, before the Settlement Agreement was executed in December 2010. *See* Caldwell Decl. ¶¶ 6-7; Mot. at 4. Accordingly, under Section VI(E)(4), Plaintiff is not eligible for consideration for a loan modification pursuant to the Settlement Agreement. Consequently, Plaintiff's claim for failure to offer Plaintiff a HAMP or MAP2R loan modification are not likely to succeed.

### C. Remaining TRO Factors

As set forth above, the probability of Plaintiff's succeeding on any of her claims is extremely low. Thus, the "likely to succeed" factor weighs against an injunction. When the chance of success is very low, courts have refused to grant preliminary injunctive relief to halt a home foreclosure. *Gonzalez v. Wells Fargo Bank*, C 09-03444 MHP, 2009 WL 3572118, at *7 (N.D. Cal. Oct. 30, 2009).

On the other hand, the Court recognizes that loss of one's home constitutes irreparable harm, and the irreparable harm factor weighs in favor of an injunction. *Saba v. Caplan*, C 10-02113 SBA, 2010 WL 2681987, at *5 (N.D. Cal. July 6, 2010).

As for the third factor, the balance of equities tips heavily in Defendant's favor. The debt from the loan is now over $869,000 and Plaintiff has not made a payment in three years. Compl., Ex. D. During this time, Plaintiff has resided on the Property rent-free at Defendant's expense. Opp'n at 6.

Moreover, Plaintiff's strategic initiation of serial bankruptcy proceedings on the eve of foreclosure sales in April 2012, November 2012, and February 2013 and filing of serial ex parte applications for TRO shortly before scheduled foreclosure sales in November 2012, March 2013, and now July 2013, as well as litigation of virtually identical claims in both the Central and Northern Districts of California, constitute abuse of the judicial process. The Court is disturbed that Plaintiff filed an ex parte application for TRO before this Court without disclosing Plaintiff's pending case in the Central District of California for virtually the same claims and without disclosing the fact that the Central District Court previously denied Plaintiff's ex parte application for TRO.

Plaintiff's TRO application also fails because Plaintiff failed to comply with this Court's order that Plaintiff identify "all dates on which a Trustee Sale has been scheduled on Plaintiff's Property and when Plaintiff became aware of each date" and "all applications for a temporary restraining order, preliminary injunction or permanent injunction Plaintiff has filed to enjoin foreclosure on Plaintiff's Property and the disposition of each application." ECF Nos. 13; *see also* ECF No. 16. Rewarding Plaintiff's abuse of the judicial process and failure to comply with a Court order by allowing Plaintiff to live rent free at Defendant's expense for a fourth year is not in the public interest. Moreover, as stated above, Plaintiff is not entitled to ex parte relief because she has created her own emergency as a strategic choice.

The Court may not issue an *ex parte* TRO except in "very narrow band of cases." *Reno Air Racing*, 452 F.3d at 1131. This case does not fit into the "narrow band" justifying an *ex parte* TRO,

13

Case No.: 13-CV-1344-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

as defined by the Ninth Circuit. Accordingly, the Court DENIES Plaintiff's *ex parte* application for TRO.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiff's ex parte application for a TRO is DENIED.

Dated: July 16, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No.: 13-CV-1344-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER